Leslie James DAVIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05-89-00929-CR.

Court of Appeals of Texas,
Dallas.

Sept. 18, 1990.

Rehearing Denied Oct. 25, 1990.

Keith E. Jagmin, Dallas, for appellant.

Sharon Batjer, Dallas, for appellee.

Before McCLUNG, BAKER and THOMAS, JJ.

## OPINION

THOMAS, Justice.

Leslie James Davis appeals from a conviction of aggravated robbery. After the jury returned a guilty verdict, the trial court assessed punishment, enhanced by one felony conviction, at thirty years' confinement in the Texas Department of Corrections.[1] In three points of error, Davis contends that: (1) the evidence is insufficient to sustain the conviction; (2) the jury selection occurred in a racially discriminatory manner; and (3) the trial court erred in sustaining the State's challenge for cause as to a particular veniremember. Because we hold that the State did not provide a racially neutral explanation for one of its peremptory challenges, the trial court's judgment is reversed and the cause is remanded for a new trial.

## FACTUAL BACKGROUND

On January 18, 1989, at about 8:00 p.m., a black male wearing a blue jacket entered the Allstar Inn in Irving, Texas. After inquiring about renting a room, the man showed Bill Roberts, the motel manager, a gun, announced that "this is a stick-up," and demanded money. When Roberts explained that he did not have a key to the cash drawer, the robber pointed to Judy Kersh, the desk clerk and night auditor, and said, "I want the money or I'm going to shoot mama here." Roberts was ordered to keep his hands on the counter

---

1. Now Texas Department of Criminal Justice, Institutional Division.

while Kersh retrieved the money. Before fleeing, the robber ordered Kersh and Roberts to lie on the floor for five minutes. Once the robber had left, Kersh notified the police. Kersh and Roberts identified Davis as the man who robbed the motel.

On the evening of the robbery, Columbus Hill, a motel guest, observed a car pass by the motel and then travel down a back street. The first time Hill observed the car, it was occupied by two black males and one black female. The car traveled around the block and passed Hill a second time. Hill noticed at this time that there was only a male driver and the female in the car. As he watched the car, it pulled into the motel parking lot and stopped directly beneath him. Hill then observed a black male wearing a blue jacket run toward the car. Hill explained that he memorized the license plate number because the activity seemed suspicious. Approximately thirty minutes later, Hill started to leave the motel and noticed a number of people standing outside the office. Hill was informed that there had been a "robbery" and he immediately told the police officers about the car he had seen and gave them the license number. The police later determined that the car was registered to Davis.

Davis presented four witnesses who testified that he was at home on the evening of the robbery and that his car was parked in front of the house. They explained that they could remember this particular date because Davis's sister was quite ill and the car had to be available in case she required transportation to the hospital.

## SUFFICIENCY OF THE EVIDENCE

█ In the first point of error, Davis alleges that the evidence is insufficient to sustain the conviction. When the sufficiency of the evidence is challenged, this Court must examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.

App.1989). The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be afforded the testimony. *Vanderbilt v. State,* 629 S.W.2d 709, 716 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982). Questions concerning the credibility of witnesses and the weight to be given their testimony are to be resolved by the trier of fact. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

In order for a defendant to be charged with aggravated robbery, the elements of robbery, as well as an aggravating element, must be present. TEX.PENAL CODE ANN. § 29.03 (Vernon Supp.1990). A person commits the offense of robbery when: (1) in the course of committing theft; and (2) with intent to obtain or maintain control of the property; (3) the person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX.PENAL CODE ANN. § 29.02(a)(2) (Vernon 1989). A person commits the offense of aggravated robbery if: (1) he commits robbery as defined in section 29.02 of the Texas Penal Code; and (2) he uses or exhibits a deadly weapon. TEX.PENAL CODE ANN. § 29.03(a)(2) (Vernon Supp.1990).

█ Davis asserts that the evidence does not support a conviction for *aggravated* robbery since Kersh, the complainant, did not actually see the deadly weapon. Therefore, Davis argues that his conviction should be reversed and the cause remanded for a new trial on the lesser included offense of robbery. We disagree. The indictment charging Davis with aggravated robbery reads in pertinent part as follows:

[T]hat one Leslie James Davis ... did unlawfully, then and there while in the course of committing theft of property and with intent to obtain and maintain control of said property of JUDY W. KERSH, hereinafter called complainant, the said property being current money of the United States of America without the effective consent of the said complainant and with intent to deprive the said complainant of said property, did then and

there knowingly and intentionally threaten and place the said complainant in fear of imminent bodily injury and death, and the defendant did then and there use and exhibit a deadly weapon, to-wit: a firearm....

The prosecution is bound by the allegations it sets out in the charging instrument and must prove those allegations beyond a reasonable doubt in order to obtain a valid conviction. *Doyle v. State*, 661 S.W.2d 726, 729 (Tex.Crim.App.1983). Therefore, this Court will overrule this point if the record contains sufficient evidence to show that, while in the course of committing theft, he threatened and placed Kersh in fear of imminent bodily injury and death, and he used and exhibited a deadly weapon.

The evidence established that a black male entered the motel and demanded money. Davis was identified as the robber. Kersh offered direct evidence of her fear of imminent bodily injury and death during the following exchange:

[State]: Did he say anything to you or did you say anything to him?

[Kersh]: Not right away. He told [Roberts] to keep his hands on the counter and asked for the money, and [Roberts] said, "I don't have the key." And he said, "I want the money or I'm going to shoot mama here."

[State]: Who was he referring to?

[Kersh]: Me, he pointed at me.

[State]: When he said that were you concerned?

[Kersh]: Oh, yes.

[State]: Were you in fear of imminent bodily injury and death?

[Kersh]: Yes, I was.

\* \* \* \* \* \*

[State]: What was going through your mind when you laid on the floor?

[Kersh]: I was waiting for a bullet in the back of the head.

[State]: Why did you do what he told you?

[Kersh]: Because I was afraid he would kill me if I didn't. I hoped if I did what he said he would leave me alone.

Davis's use of a gun during the robbery was established by the following testimony:

[State]: When did something unusual happen?

[Roberts]: When he told me this is a stick-up and showed me a gun.

[State]: You said he showed you a gun, how did he show you a gun?

[Roberts]: The gun was stuck inside in his—in a sock inside his belt, and he pulled it up and showed it to me.

\* \* \* \* \* \*

[State]: You stated he pulled the gun up. How much of the gun did you see?

[Roberts]: The butt of it.

[State]: Have you seen guns before?

[Roberts]: Yes.

[State]: Could you tell without a doubt this was a gun?

[Roberts]: Yes.

\* \* \* \* \* \*

[State]: What did he say to you as he pulled the gun up?

[Roberts]: He said this was a stick-up.

\* \* \* \* \* \*

[State]: Did he say anything else to you?

[Roberts]: Yes, he said, "Get your hands on the counter."

\* \* \* \* \* \*

[State]: Did he threaten you or Ms. Kersh either one?

[Roberts]: Yes.

[State]: What did he say?

[Roberts]: Said, "If I don't get the rest of the money somebody is going to get shot."

Kersh testified that, although she did not see the gun, she believed that Davis had one during the robbery. The victim need not see the weapon in order for the jury to conclude that the assailant communicated a threat of serious bodily injury or death. *Webber v. State*, 757 S.W.2d 51, 54 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd) (complainant feared assailant had weapon when he put his hand on "something" inside his shirt, but did not see assailant's weapon). Roberts testified that he saw the butt of the gun that Davis was carrying during the commission of the rob-

bery, although it was partially covered with a sock and tucked inside Davis's belt. It is not necessary for a witness to see the entire weapon or any particular part of it to identify it as a pistol. *Banda v. State,* 758 S.W.2d 902, 903 (Tex.App.—Corpus Christi 1988, no pet.) (complainant saw only the butt of a pistol); *Riddick v. State,* 624 S.W.2d 709, 711 (Tex.App.—Houston [14th Dist.] 1981, no pet.) (complainant saw the end of a gun sticking out of a bag). Roberts stated that he had seen guns before and was familiar with them. The record also shows that Roberts had no doubt that what he saw was a gun. The familiar shape of the butt of the gun gave rise to a reasonable inference on the part of Roberts that Davis had a gun. No further evidence was required to show that what Roberts perceived to be a gun was in fact a gun. *See Porter v. State,* 601 S.W.2d 721, 723 (Tex.Crim.App.1980). "[T]he essential element of aggravated robbery is the threat or engendered fear of imminent bodily injury or death generated simply by the *presence* of a deadly weapon, its use or exhibition being merely incidental to its presence." *Maxwell v. State,* 756 S.W.2d 855, 858 (Tex.App.—Austin 1988, pet. ref'd) (emphasis in original).

In support of his position, Davis relies upon *Taylor v. State,* 637 S.W.2d 929 (Tex. Crim.App.1982), where a conviction of aggravated robbery was reversed because the State did not prove that the threat of imminent bodily injury was in any way communicated to the complainant by the use and exhibition of a deadly weapon. *Taylor,* 637 S.W.2d at 930. Davis's reliance is misplaced because *Taylor* is clearly distinguishable. In *Taylor,* the indictment charged the defendant with robbery *and* also alleged that the offense became aggravated because the defendant "did then and there by using and exhibiting ... a handgun, intentionally and knowingly threaten [Complainant] with imminent bodily injury." The evidence established that a handgun was used during the commission of the robbery by a party against the complainant's co-worker. However, the testimony further demonstrated that the complainant never saw Taylor with a gun and that she

was in fear of imminent bodily injury because of Taylor's physical assault against her and not by the use of a handgun. The evidence further established that the complainant never saw the weapon being used against her co-worker. Thus, the State did not prove all of the elements as alleged in the indictment. *Taylor,* 637 S.W.2d at 933. The indictment in the present case alleged that, while in the course of committing theft, Davis placed Kersh in fear of imminent bodily injury and death *and* he used and exhibited a deadly weapon. Unlike *Taylor,* the State was not required to prove that Kersh was threatened with a deadly weapon.

Having reviewed the facts in the light most favorable to the verdict, we conclude that there is sufficient evidence on which the jury could base its conclusion that Davis placed Kersh in fear of imminent bodily injury and death and used or exhibited a deadly weapon during the commission of the theft. Consequently, we hold that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Davis's first point is overruled.

### JURY SELECTION

■■■ In the second point of error, Davis contends that the trial court erred in overruling his objection to the jury, as empaneled, because the State violated his right to equal protection of the law under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by exercising peremptory challenges to exclude black veniremen from the jury on the basis of race. In order to invoke the protection of *Batson,* a defendant must raise an inference of purposeful discrimination, and the trial court must determine that a prima facie case of discrimination exists by virtue of the State's use of its peremptory challenges. A defendant may establish a prima facie case of discrimination by showing:

1. that he is a member of a cognizable racial group;

2. that the prosecutor has exercised peremptory challenges to remove mem-

bers of the defendant's race from the venire; and

3. that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremembers on account of their race.

*Batson v. Kentucky*, 476 U.S. at 96, 106 S.Ct. at 1723; *Keeton v. State*, 724 S.W.2d 58, 65 (Tex.Crim.App.1987); *see also* TEX. CODE CRIM.PROC.ANN. art. 35.261(a) (Vernon 1989). When a defendant establishes a prima facie case, the burden shifts to the State to come forward with racially neutral explanations as to why it exercised peremptory challenges against veniremembers of the same cognizable racial group as the defendant. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Keeton*, 724 S.W.2d at 65.

The State used peremptory challenges to strike four black veniremembers. Davis, who is black, alleges on appeal that the State used its peremptory challenges in a racially discriminatory way to strike two of the black veniremembers. The issue before this Court is whether the State provided racially neutral explanations for the peremptory strikes. The record reflects that the following exchange occurred during the *Batson* hearing:

> [Defense Counsel]: Number 37, black female, Ms. Butler, also said that she could be fair in this case. Number 39—Judge, this is the main one—Mr. Drake, who is a black male, was asked no questions and made no response, and there is absolutely no reason for him being struck by the State.

> \*   \*   \*   \*   \*   \*

> [Prosecutor]: Your Honor, the State should have challenged [Venireman Number 37] for cause. At the time we were trying to make a panel on the one. [sic] We did not. She said she could not base a verdict on the testimony of one eyewitness.

> The Court: Number 39, Drake?

> [Prosecutor]: Mr. Drake falls in the category of what's called a sight strike off the panel of—out of a panel of 60, the State had three sight strikes, meaning as they come in the State makes a notation beside somebody's name if they appear to just not fit within any type of group that the State would ever want to put on a jury. And out of these three sight strikes they were Juror Number 8, who was a white male, Mr. Henderson; Juror Number 38, Mr. Scott, who was a black male, and Juror 39—I'm sorry Juror 39 was Mr. Drake was a black male; and Juror 40, Mr. Graham, who was a black male.

> \*   \*   \*   \*   \*   \*

> The State struck both Mr. Drake and Mr. Henderson based on the fact of their appearance and the way they reacted to my voir dire. Mainly just a sight strike on both individuals. I did ask questions of Mr. Drake as I did Mr. Henderson, Your Honor. His responses were not what disqualified him from my opinion. [sic]

The trial court found that the State had provided neutral, reasonable explanations for its peremptory strikes. In reviewing the trial court's decision, we must consider the evidence in the light most favorable to the trial judge's rulings and determine whether those rulings are supported by sufficient evidence. If the record supports the trial court's findings, they will not be disturbed on appeal. *Keeton v. State*, 749 S.W.2d 861, 870 (Tex. Crim.App.1988) (*Keeton II*).[2] However, the trial judge must examine each of the prosecutor's reasons for striking a potential black juror within the circumstances of the particular case to determine whether the "neutral explanation" for the strike is really a pretext for a racially motivated peremptory challenge. *Keeton II*, 749 S.W.2d at 868. In making this determination, the trial judge must ascertain whether the prosecutor has articulated a "clear and

---

**2.** We do not consider the effect, if any, the recent decision of *Meraz v. State*, 785 S.W.2d 146 (Tex.Crim.App.1990), has on the standard for reviewing evidence introduced at a *Batson* hearing. The difference is of no consequence under this record because the evidence does not pass either standard.

specific" explanation of "legitimate reasons" for striking the black veniremember. *Batson*, 476 U.S. at 97–98 n. 20, 106 S.Ct. at 1723–1724 n. 20. As explained in *Keeton II:*

> The trial judge cannot merely accept the specific reasons given by the prosecutor at face value, the judge must consider whether the facially neutral explanations are contrived to avoid admitting acts of group discrimination. This evaluation by the trial judge is necessary because it is possible that an attorney, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his primary factor in deciding to strike the juror.

*Keeton II*, 749 S.W.2d at 868. Once a prosecutor has given a racially neutral explanation that is legally adequate to support a judgment in favor of the State, an issue of fact is joined which can only be resolved by the trial court's assessment of evidentiary weight and credibility. *Tompkins v. State*, 774 S.W.2d 195, 202 (Tex. Crim.App.1987), *aff'd*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989).

■ With these principles in mind, we review the trial court's determination that the prosecutor did not use peremptory strikes solely to exclude members of Davis's race from service on the jury. We focus our analysis on the State's use of peremptory strikes against veniremember Number 39, Gary Keith Drake. The prosecutor classified his strike of Drake as that of a "sight strike," which is exercised against anyone who does not fit within any type of group that the State would ever want to put on a jury. However, the prosecutor failed to specify the types of people for which he was looking to serve as jurors. The prosecutor further claimed that Drake was stricken because of his appearance and reaction to voir dire. A juror's appearance and demeanor may constitute a valid basis upon which to exercise a peremptory challenge. *See e.g., U.S. v. Forbes*, 816 F.2d 1006 (5th Cir.1987) (juror was sitting with arms crossed during voir dire and appeared hostile to the prosecution); *Chambers v. State*, 724 S.W.2d 440

(Tex.App.—Houston [14th Dist.] 1987, pet. ref'd) (juror was not attentive during voir dire). However, in the present case, there is nothing in the record to reveal that Drake appeared or reacted adversely to the prosecution during voir dire. In fact, the prosecutor admitted that Drake's answers were not what disqualified him. By failing to explain why he considered Drake's appearance and reaction during voir dire to be adverse, the prosecutor clearly did not articulate "clear and reasonably specific" explanations of "legitimate reasons" for striking Drake. *Batson*, 476 U.S. at 97–98 n. 20, 106 S.Ct. at 1723–1724 n. 20. Ironically, the State asserts in its brief that this lack of explanation for the prosecutor's strike of Drake shows the prosecutor's sincerity because he "did not try to make up race-neutral reasons" for challenging Drake. This reasoning completely undermines *Batson* by allowing a prosecutor's affirmation of good faith to be sufficient to rebut the presumption of discriminatory motive. *Keeton II*, 749 S.W.2d at 868.

■ Under these facts, we hold that the State's explanation does not give a plausible, racially neutral reason to support Drake's exclusion. We need not address the propriety of the peremptory challenges of veniremembers other than Drake because we conclude that the record fails to support the trial court's conclusion that the prosecutor's strike of that prospective juror was race-neutral. The exclusion of even one member of Davis's race from the jury for racial reasons invalidates the entire jury selection procedure and entitles Davis to a new trial. *See Batson*, 476 U.S. at 100, 106 S.Ct. at 1725; *C__E__J__ v. State*, 788 S.W.2d 849, 958 (Tex.App.—Dallas 1990, n.w.h.). Because we sustain the second point of error, we need not address Davis's third point.

The trial court's judgment is reversed and the cause is remanded for a new trial in accordance with this opinion.