**David MOELLER, Appellant,**

v.

**Michael BLANC, M.D. and Columbia Hospital at Medical City Dallas Subsidiary, L.P. d/b/a Medical City Dallas Hospital, Appellees.**

No. 05–06–00063–CV.

Court of Appeals of Texas, Dallas.

Dec. 30, 2008.

Rehearing Overruled Feb. 18, 2009.

Frederick H. Shiver, Russell & Shiver, L.L.P., Dallas, TX, Peter M. Kelly, Houston, TX, for Appellant.

Michelle E. Robberson, David E. Olesky, Cooper & Scully, P.C., Ty Bailey, Michael A. Yanof, Stinnett, Thiebaud & Remington, L.L.P., Dallas, TX, for Appellees.

Before Justices WHITTINGTON, WRIGHT, and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

This is a medical-malpractice case. On appeal, David Moeller contends that the trial court erred by overruling his objection to the racially discriminatory use of a peremptory challenge during jury selection. We agree. We reverse and remand for a new trial.

## I. BACKGROUND

**Facts**

Moeller presented at Medical City Dallas Hospital to undergo an arteriogram and an angioplasty on his left leg. Dr. Michael Blanc performed the procedures. Complications necessitated a second surgery, which resulted in the amputation of Moeller's left leg above the knee.

**Procedural history**

Moeller sued several defendants, but by the time of trial the only remaining defendants were Blanc and Columbia Hospital at Medical City Dallas Subsidiary, L.P. d/b/a Medical City Dallas Hospital ("Medical City").

The trial lasted nine days. In answer to a broad-form question, the jury refused to find that the negligence of either defen-

dant proximately caused the occurrence in question. Accordingly, the jury answered no other questions in the charge. The trial court signed a take-nothing judgment in favor of appellees.

## II. ISSUE

In Moeller's first issue, he contends that the trial court erred by overruling his objection that Blanc used a peremptory strike to exclude Juror No. 28, an African-American venire member, from the jury on account of her race.[1]

## III. STANDING

■ In *Batson v. Kentucky,* the United States Supreme Court held that a prosecutor's use of peremptory strikes to exclude jurors solely because they are of the same race as a criminal defendant violates the Equal Protection Clause of the Fourteenth Amendment. 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Court later extended *Batson* to civil cases by holding that the race-based exclusion of a juror in a civil case violates the equal-protection rights of the excluded juror. *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 616, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). The exclusion of even one juror for prohibited reasons invalidates the entire jury-selection process, so a trial court's erroneous denial of a *Batson* challenge always requires a new trial. *Dominguez v. State Farm Ins. Co.,* 905 S.W.2d 713, 717 (Tex.App.-El Paso 1995, writ dism'd by agr.); *see also Snyder v. Louisiana,* —— U.S. ——, 128 S.Ct. 1203, 1208, 170 L.Ed.2d 175 (2008).

■ Medical City asserts that Moeller lacks standing to assert an equal-protection challenge because Moeller is Caucasian and the excluded juror was African-American. We conclude, however, that a civil litigant has standing to assert an equal-protection challenge to a racially discriminatory peremptory strike regardless of whether the litigant and the venire member share the same race. *Batson* held, as a matter of equal protection, that a criminal defendant may object to the discriminatory use of peremptory challenges against jurors of his or her own race. 476 U.S. at 96, 106 S.Ct. 1712. As Medical City points out, some courts held in the immediate post-*Batson* era that a criminal defendant who was not of the same race as the peremptorily struck jurors could not bring an equal-protection complaint, but could raise only a due-process complaint on the ground that the strikes had arbitrarily deprived him or her of a jury composed of a fair cross-section of the community. *See, e.g., Crawford v. State,* 770 S.W.2d 51, 54 (Tex.App.-Texarkana 1989, no pet.). But this view was discredited by the Supreme Court's 1991 decision in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). In *Powers,* the Court held that a criminal defendant may object to race-based peremptory exclusions of jurors who do not share his or her race based on the equal-protection rights of the excluded jurors. *Id.* at 402, 415, 111 S.Ct. 1364. And when the Court extended *Batson* to civil cases two months after deciding *Powers,* the Court again relied on the equal-protection rights of the challenged jurors (through the "equal protection component of the Fifth Amendment's Due Process Clause"), and not on the equal-protection or due-process rights of the litigant. *Edmonson,* 500 U.S. at 616, 111 S.Ct. 2077.

1. It appears that appellees collectively were afforded eight peremptory strikes, plus one alternate strike. Blanc's counsel, however, took the lead in defending those strikes against Moeller's *Batson* objection. Accordingly, we will generally refer to the strikes as Blanc's.

When the Texas Supreme Court first applied *Edmonson,* it too referred to the "equal protection rights of the [peremptorily] challenged juror." *Powers v. Palacios,* 813 S.W.2d 489, 490 (Tex.1991) (per curiam); *see also Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997) (referring to the Equal Protection Clause in a civil case involving allegedly discriminatory peremptory strikes). Because the objection is based on the equal-protection rights of the excluded juror, *Powers v. Ohio* fully applies, and there is no requirement that an objecting civil litigant share the race of the excluded juror in order to have standing to make an equal-protection challenge. *See Great Plains Equip., Inc. v. Koch Gathering Sys., Inc.,* 45 F.3d 962, 964 (5th Cir. 1995); *Dominguez,* 905 S.W.2d at 715; *Tex. Tech Univ. Health Sciences Ctr. v. Apodaca,* 876 S.W.2d 402, 407 n. 1 (Tex. App.-El Paso 1994, writ denied). We conclude that Moeller has standing to make an equal-protection challenge to Blanc's exercise of peremptory strikes.

## IV. *BATSON* CHALLENGES

■ The Supreme Court has prescribed a three-step procedure for resolving *Batson* challenges. At the first step of the process, the opponent of the peremptory strike must establish a prima facie case of racial discrimination. If that showing is made, at the second step the burden shifts to the striking party to come forward with a race-neutral explanation for the challenged strike. If the striking party carries its burden, the trial court must then decide at the third step of the process whether the party challenging the strike has carried its burden of proving "purposeful racial discrimination." *Batson,* 476 U.S. at 89, 106 S.Ct. 1712; *see also Snyder,* 128 S.Ct. at 1208; *Miller–El v. Dretke,* 545 U.S. 231, 239, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) ("*Miller–El II* "); *Davis v. Fisk*

*Elec. Co.,* 268 S.W.3d 508, 514 n. 4 (Tex. 2008); *Goode,* 943 S.W.2d at 445–46.

## V. PRIMA FACIE CASE

■ At the first step of the analysis, Moeller bore the burden of demonstrating a prima facie case of racial discrimination. But "[o]nce a party offers a race neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of a prima facie case is moot." *Goode,* 943 S.W.2d at 445. Blanc's counsel offered explanations for the peremptory strikes and the trial court ruled on them, so we proceed directly to the second step of the analysis.

## VI. RACE–NEUTRAL EXPLANATION

At the second step, Blanc bore the burden of providing a race-neutral explanation for his use of peremptory strikes. Moeller contends that Blanc did not carry this burden as to Juror No. 28.

### Standard of review

■ The standard of review applicable to *Batson* rulings is abuse of discretion. *Davis,* 268 S.W.3d at 515–16. A trial court "abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles." *Goode,* 943 S.W.2d at 446. With respect to factual matters, a trial court abuses its discretion if, on the evidence, it reasonably could have reached only one decision and failed to do so. *Moroch v. Collins,* 174 S.W.3d 849, 864 (Tex.App.-Dallas 2005, pet. denied). At the second step of the analysis, however, there is no fact-finding to be done. The trial court simply accepts the explanation for the strike at face value and determines whether it is a reasonably specific race-neutral reason. Accordingly, the second step presents a legal question, and we do not defer to the trial court on

questions of law. *See Perry Homes v. Cull,* 258 S.W.3d 580, 598 (Tex.2008) (even under the abuse of discretion standard, appellate courts "do not defer to the trial court on questions of law"), *petition for cert. filed,* 77 U.S.L.W. 3359 (U.S. Nov. 26, 2008) (No. 08–707). We note that other jurisdictions have held that de novo review is appropriate at step two of the analysis because it presents a question of law. *See, e.g., Valdez v. People,* 966 P.2d 587, 590 (Colo.1998); *People v. Knight,* 473 Mich. 324, 701 N.W.2d 715, 726–27 (2005). Thus, we apply what is in effect a de novo standard of review at the second step of the *Batson* analysis.

**Race-neutral reasons**

In *Batson,* the Court acknowledged that the proffered race-neutral reason "need not rise to the level justifying exercise of a challenge for cause," 476 U.S. at 97, 106 S.Ct. 1712, but also insisted that the attorney making the peremptory challenges "must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges," *id.* at 98 n. 20, 106 S.Ct. 1712 (internal quotations omitted). General denials of discriminatory intent and assertions of good faith are not sufficient. *Id.* at 98, 106 S.Ct. 1712. Finally, the Court indicated that the neutral explanation must be "related to the particular case to be tried." *Id.*

In *Hernandez v. New York* plurality emphasized that the step-two inquiry is limited to the "facial validity" of the attorney's explanation, and it stated that "[u]nless a discriminatory intent is inherent in the [attorney's] explanation, the reason offered will be deemed race neutral." 500 U.S.

352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality op.). The Court held that a prosecutor's decision to strike jurors whose bilingualism called into doubt their ability to accept the official translator's rendition of Spanish-language testimony was race-neutral on its face, even if it had a disparate impact on Latino venire members. *Id.* at 361–63, 111 S.Ct. 1859.

In *Purkett v. Elem,* the Court concluded that "[t]he second step of the process does not demand an explanation that is persuasive, or even plausible." 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). The Court suggested that the *Batson* requirement of a clear, specific explanation related to the particular case was meant to reinforce the rule that general denials of discrimination and assertions of good faith are insufficient. *Id.* at 769, 115 S.Ct. 1769. Thus, the Court held that an explanation that a potential juror had long, unkempt hair and facial hair was "race neutral and satisfies the prosecution's step two burden." *Id.* The Court repeated the core rule from *Batson* that a race-neutral reason must be more specific than a bare denial of discriminatory intent or a bald assertion of good faith to be valid. *Id.*

In *Miller–El II,* the Court reiterated the three steps of the analysis, and it quoted *Batson* anew for the proposition that the striking attorney "must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challeng[e]." 545 U.S. at 239, 125 S.Ct. 2317 (quoting *Batson,* 476 U.S. at 98 n. 20, 106 S.Ct. 1712).[2]

Lower courts, both state and federal,[3] have found *Batson* error at the second

---

**2.** The Court reversed Miller–El's conviction based on the third step of the *Batson* analysis. *Miller–El II,* 545 U.S. at 266, 125 S.Ct. 2317.

**3.** Although we are bound only by the decisions of the United States Supreme Court and the Texas Supreme Court on issues of federal law, we may look to the decisions of other courts for persuasive authority. *See Penrod*

step of the analysis after *Purkett*. Proffered reasons generally fail the second step for one of two reasons: (1) they are explicitly or implicitly based on either race or sex, or (2) they are not sufficiently "clear and specific" to provide a factual basis that courts can review for legitimacy.

In the first category are cases such as *Fritz v. State*, 946 S.W.2d 844 (Tex.Crim. App.1997), in which the court held that striking all male jurors under the age of thirty because of their "potential bias or shared identity" with the defendant was unconstitutional. *Id.* at 847. Similarly, a juror's membership in the NAACP is not a race-neutral reason for striking him. *Somerville v. State*, 792 S.W.2d 265, 267–69 (Tex.App.-Dallas 1990, pet. ref'd). One court has held that striking a white juror because she was of the "redneck variety" was an impermissible race-based strike. *Payton v. Kearse*, 329 S.C. 51, 495 S.E.2d 205, 208 (1998).

The second category of second-step *Batson* error is particularly relevant to this case. "If ... general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause would be but a vain and illusory requirement." *Batson*, 476 U.S. at 98, 106 S.Ct. 1712 (internal quotations omitted). Accordingly, courts have frequently reversed judgments because a striking party's explanation for its strike was not "clear and reasonably specific," as required by *Batson*. *See, e.g., State v. Walker*, 154 Wis.2d 158, 453 N.W.2d 127, 135 (1990). A vague "all inclusive reason falls far short of an articulable reason that enables the trial judge to assess the plausibility of the proffered reason." *Alex v. Rayne Concrete Serv.*, 951 So.2d 138, 153 (La.2007). Vague reasons are, "in essence, no explanation at all." *People v. Carillo, 9*

A.D.3d 333, 780 N.Y.S.2d 143, 145 (N.Y.App.Div.2004). Thus, the Wisconsin Supreme Court has rejected as insufficient an explanation that the prosecutor "had no information about" a particular venire member that he struck. *Walker*, 453 N.W.2d at 135. The Tenth Circuit has rejected as inadequate a prosecutor's explanation that he decided to strike a venire member "based upon his background and other things in his questionnaire." *United States v. Chalan*, 812 F.2d 1302, 1312, 1314 (10th Cir.1987). Other cases are in accord. *See, e.g., Davis v. State*, 796 S.W.2d 813, 819 (Tex.App.-Dallas 1990, pet. ref'd) (explanation that strike was based on juror's "appearance and reaction to voir dire" was too vague to satisfy second step); *Zakour v. UT Med. Group, Inc.*, 215 S.W.3d 763, 773–74 (Tenn.2007) (rejecting as vague an explanation that challenges were "all based on experience and body mechanics").

A number of courts have rejected explanations based on mere feelings or intuition. The Eleventh Circuit, for example, has held such explanations inadequate in at least two cases. In one case, the prosecutor said, "I don't have any particular reason [for striking an African–American venire member]. I just got a feeling about him as I have about Mr. Gonzalez and several others." *United States v. Horsley*, 864 F.2d 1543, 1544 (11th Cir.1989) (per curiam). The court of appeals held that this "vague explanation ... was legally insufficient to refute a prima facie case of purposeful racial discrimination." *Id.* More recently, the same court held that a prosecutor's explanation that he struck jurors that he thought would be "favorable to acquit" is not a sufficiently specific race-neutral reason. *Bui v. Haley*, 321 F.3d 1304, 1316 (11th Cir.2003). The Eleventh Circuit has further explained that mere "feelings" about potential jurors are not

adequate race-neutral explanations unless supported by facts that are subject to observation and proof, such as hostile facial expressions. *Barfield v. Orange County,* 911 F.2d 644, 648 (11th Cir.1990). *But see United States v. Bentley–Smith,* 2 F.3d 1368, 1375 (5th Cir.1993) (per curiam) (opining that "intuition," standing alone, is a sufficient race-neutral reason under *Batson* ). *Cf. Bentley–Smith,* 2 F.3d at 1385 (Johnson, J., dissenting) (arguing that "an explanation based upon unsupported intuition can never be a legitimate race neutral explanation" because the trial court has no basis to determine if it is pretextual).

Several other jurisdictions have held that merely having a "bad feeling" about a potential juror is too vague to constitute an adequate race-neutral reason for a peremptory strike. *See Ex parte Bankhead,* 625 So.2d 1146, 1147–48 (Ala.1993) (rejecting as "untestable" the explanation that prosecutor had "an unexplainable gut reaction" that a potential juror was "bad"); *Robinson v. United States,* 878 A.2d 1273, 1289 n. 25 (D.C.2005) (rejecting explanation that prosecutor "just didn't like" potential juror); *Alex,* 951 So.2d at 153 ("[A]lthough 'gut feelings' may factor into the decision to utilize a peremptory challenge, this reason, if taken alone, does not constitute a race-neutral explanation."); *Carillo,* 780 N.Y.S.2d at 144–45 (rejecting explanation that prosecutor "just did not get a good feel from" a potential juror).

**Application of the law to the facts**

 ■ In this case, voir dire extended over four days, and the jury had to be drawn from two different venires after it became apparent that the court would not be able to seat a jury drawn only from the first venire. As jury selection came to an end, Moeller objected to appellees' use of a peremptory strike against Juror No. 28, an African–American venire member.

When asked to give his reasons for this peremptory strike, Blanc's counsel stated the following:

> On my notes, I don't know which ones are African–Americans and which ones aren't, so I'm going to give the Court my reasons for striking all eight that I struck, plus my alternate.... Juror No. 28, I have no notes on that juror in response to anybody's question. I have no response to any question [Moeller's counsel] asked. I have no response to any questions I asked, and no response to any questions [Medical City's counsel] asked, so I know nothing about that person. And based on that, was not comfortable putting that person on the jury.

Moeller's counsel responded to the reasons stated by Blanc's counsel in pertinent part as follows:

> We'd also like to say with regard to the protectual [sic] reasons that were given by the defendants in regard to—especially [Juror No. 28], who gave you no responses, essentially, as admitted by the defendants and did not engage in any conversation with any of the attorneys. There is simply nothing on the record to indicate that she should be struck, and the only reason that it could possibly be for her was—
> THE COURT: What number was that?
> [COUNSEL]: That was No. 28[.]

After Moeller's counsel finished his argument, the court asked Blanc's counsel, "Do I have any other responses?" Blanc's counsel replied, "No. I mean, unless the Court would like to hear about any one juror?" The court responded, "Well, 28 is the only one where I don't have any kind of response." Blanc's counsel then offered further argument as follows:

> Twenty-eight is the one who, as I told the Court, my notes don't reflect who's who color-wise. Twenty-eight did not,

according to my notes, and according to [co-counsel's] notes, did not raise—that juror did not raise his or her hand to any of the hot button questions anybody asked, so that juror—we have no idea what that juror's beliefs are.

[MOELLER'S COUNSEL]: It would be sole impartiality, Your Honor.

[BLANC'S COUNSEL]: Excuse me, Counsel, while the colloquialism and the joke was made the other day about the silent ones wind up on the jury,[4] if I can't get a read on that juror one way or the other, I'm not going to accept that juror. Black, white, brown, yellow, I have no information about that juror, and I'm not going to accept that juror.

The trial court accepted Blanc's explanations and seated the jury without Juror No. 28. The trial court made no specific findings on the record.

We must examine the reasons given by Blanc to determine if they were sufficient to satisfy his burden of providing a race-neutral explanation for this use of his peremptory strike.

We initially observe that after Moeller lodged his *Batson* challenge, Blanc advised the trial court he did in fact "understand that I'm supposed to give you my reasons . . . and I'm prepared to do that on all of my eight strikes." The trial court interjected that it expected him to give "race neutral reason[s]." Blanc's counsel identified himself and stated his notes did not reflect the race of any of the panel members, so he was going to give his reasons for striking all eight. The record thus shows Blanc was aware of his responsibility to give race-neutral reasons to justify his peremptory strikes when his opponent made a *Batson* challenge, whether or not his personal notes reflected the race of the panelists. Further, the juror information cards reflected the race of each panelist, including Juror No. 28.[5]

In essence, Blanc stated he was not comfortable with having Juror No. 28 on the jury because she did not raise her hand in response to any of the "hot button questions," and consequently, he had no notes about her, and therefore had no information about her or her beliefs. Note-taking is a mechanical process that an attorney may use to retain information and impressions about venire members. It is undertaken voluntarily and at counsel's complete discretion. A lack of notes reflects an attorney's conscious choice about what information to record or not record during the jury-selection process, not his motive for striking any particular juror. In other words, the absence of notes reveals only what counsel did, but it is not probative to show why he did it. Further, because Blanc instructed the panel to raise their hands or their cards when affirming agreement or disagreement to various questions posed, his notes would show only who agreed or disagreed with the questions posed. While Blanc did conduct individual questioning of some panelists, he did not individually question Juror No. 28.

Blanc did not rely on any facts about Juror No. 28's background, nor did he rely on any objective observations about Juror No. 28's demeanor (e.g., nervousness, inattention), appearance, mannerisms during voir dire, or information equally available

---

4. During his voir-dire examination of the second venire, Moeller's counsel had previously made the following remark: "[Juror No. 10A], you've been noticeably quiet. There's a saying within courts, jurors who talk, walk; jurors who have nothing to say, stay."

5. Blanc's counsel did not expressly deny that he knew the race of the venire members that appellees struck; he said only that his notes did not reflect their race.

to all counsel from the juror information cards[6] and from examining her in open court,[7] to support his discomfort with having her serve on the jury. Blanc simply stated that he could not "get a read" on her from voir dire and was not "comfortable" with her, and therefore did not want her on the jury. We conclude that this assertion is not legally distinguishable from the cases holding that a "bad feeling" about a panelist is not an adequate race-neutral reason. *E.g., Barfield,* 911 F.2d at 648; *Bankhead,* 625 So.2d at 1147–48. It is too vague for a court to be able to judge its legitimacy because it is not based on any observable facts, so it is not legally distinguishable from a general denial of discriminatory intent.

█ Our conclusion is reinforced by the holding in the factually similar case of *State v. Walker,* 154 Wis.2d 158, 453 N.W.2d 127 (1990). After striking the only African–American member of the venire, the prosecutor provided two explanations: he denied that he had a discriminatory motive, and he explained that he had no information about that venire member. *Id.* at 135. The Wisconsin Supreme Court reversed Walker's conviction based on *Batson.* Under *Batson,* the bald denial of discriminatory intent was clearly an insufficient explanation. *Id.* And the court further concluded that the explanation that the prosecutor "had no information" about

the venire member and therefore struck him was not "clear and reasonably specific." *Id.* We agree with the holding in *Walker* that lack of information about a venire member is not a clear and reasonably specific explanation sufficient to satisfy the second step of *Batson.* Blanc's explanation that he had no information about Juror No. 28 thus fails to pass muster as a sufficient, reasonably specific race-neutral reason for striking her.

We further consider counsel's statement that Juror No. 28 failed to answer "hot button questions." A classification of questions as "hot button" is inherently subjective and places the burden on Blanc to identify which questions Blanc considered "hot button questions" and why they were so designated. Blanc did neither. This general assertion leaves us in a posture where we must conduct our own examination of the questions and speculate which, if any, were "hot button questions." It was Blanc's responsibility to give a clear and reasonably specific explanation of his legitimate reasons for exercising this challenge, and he failed to do so.

These reasons that Blanc's lead counsel gave for striking Juror No. 28 stand in stark contrast to the specific, objective reasons given for striking four other African–American venire members. He struck Juror No. 10 because he worked for the city parks department, which had been

6. The juror information cards are in the appellate record. Juror No. 28 in the first venire wrote "African American" on her card in the blank marked "race." She disclosed that she was single and had no children. She identified her occupation, her employer, and her place of birth. She also indicated her age, her highest level of education, and her religious preference. She stated that she had never been a party to a lawsuit and had never served on a jury.

7. Counsel engaged in extensive group questioning of the venire. Venire members answered questions "yes" or signaled agreement by raising their hands or their numbered cards and "no" by not raising their hands or cards. Counsel then recited for the record which venire members had raised their hands or cards. Counsel framed most of the questions to elicit "yes" answers from members who held opinions or had life experiences that would make them less inclined to favor counsel's respective side of the case. The record indicates that Juror No. 28 raised her hand during voir dire on at least seven separate occasions.

involved in an FBI investigation, and because he had previously been a plaintiff in an employment-related lawsuit; co-counsel for Blanc added that Juror No. 10 was very reluctant to serve on the jury because he had park board meetings on Thursdays. He struck Juror No. 47 because she described herself as a liberal Democrat; co-counsel for Blanc added that she was also struck because she worked as a school administrator in a public school district and because her father was a minister. Counsel for Medical City took the lead in explaining why the defendants struck Juror No. 7A from the second venire. He explained that Juror No. 7A did not give any "yes" answers during the first day of voir dire but then gave numerous "yes" answers the next day, which suggested to counsel that he was just trying to get off the jury. Finally, Blanc's counsel explained that he struck Juror No. 35A from the second venire because he was a moderate Democrat from Marshall, Texas, which counsel viewed as "pretty liberal country."

 We conclude counsel did not "give a clear and reasonably specific explanation of his legitimate reasons for exercising the challeng[e]" against Juror No. 28. *See Miller–El II*, 545 U.S. at 239, 125 S.Ct. 2317. On the contrary, counsel gave only obscure and vague explanations. Moreover, we agree with those jurisdictions that have held that general "feelings" or "intuitions" about a particular juror are not sufficiently specific to satisfy the requirement of a race-neutral reason. *See, e.g., Horsley*, 864 F.2d at 1546.

Accordingly, we conclude the trial court abused its discretion by failing to sustain Moeller's objection to the peremptory challenge of Juror No. 28.

## VII. CONCLUSION

We conclude that Blanc failed to provide a sufficient race-neutral reason for striking

Juror No. 28 at the second step of the *Batson* analysis. Error as to even one juror requires reversal. *Davis*, 268 S.W.3d at 521. We sustain Moeller's first issue. Having sustained Moeller's first issue, we need not address his other issues on appeal. We reverse the judgment of the trial court and remand the case for further proceedings.