# NO. 12-09-00116-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *NANCY MCKENNA,* *APPELLANT* | § | *APPEAL FROM THE 87TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *W & W SERVICES, INC.,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *OPINION*

Nancy McKenna appeals from a take nothing judgment in her suit for gender discrimination against W & W Services, Inc.  In her sole issue, McKenna claims that the trial court erred in denying her ***Batson*** challenge.  We affirm.

## BACKGROUND

McKenna applied for a job as a truck driver with W & W Services.  W & W Services did not hire McKenna, and McKenna believed that her gender was a motivating factor in that decision.  Thus, McKenna filed suit against W & W Services for gender discrimination.

At the trial of the case, W & W Services used its six peremptory challenges to strike six females from the venire.  McKenna believed that gender was a factor in this decision as well, and raised a ***Batson***[1] challenge.  The trial court conducted a hearing at which McKenna's attorney asked the attorney for W & W Services to state the reasons for each of the six strikes.  Counsel complied, and McKenna presented nothing further in support of her allegation that W & W Services struck the

---

[1] ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

potential jurors because of their gender. The trial court then took judicial notice that 1) seventeen females and seven males were within the "strike zone" for the jury, 2) McKenna struck three females and three males, 3) W & W Services struck six females and no males, and 4) the ultimate makeup of the jury was eight females and four males. Ultimately, the trial court found the strikes to be gender neutral, and denied McKenna's *Batson* challenge.

The case proceeded to trial, and the jury found that gender was not a motivating factor in W & W Services' decision not to hire McKenna. The trial court rendered judgment in accordance with the jury's verdict. This appeal followed.

## *BATSON* CHALLENGE

In her sole issue, McKenna contends that the trial court erred in denying her *Batson* challenge. Specifically, McKenna alleges that W & W Services engaged in purposeful discrimination when it used its peremptory challenges to strike six females from the venire.

## Applicable Law

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids a party from challenging potential jurors on the basis of their gender. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129, 114 S. Ct. 1419, 1421, 128 L. Ed. 2d 89 (1994); *Fritz v. State*, 946 S.W.2d 844, 847 (Tex. Crim. App. 1997); *see also* U.S. CONST. XIV, § 1, cl. 4 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."); *Davis v. Fisk Elec. Co.*, 268 S.W.3d 508, 510 (Tex. 2008) (acknowledging that gender based peremptory challenges are unconstitutional). The discriminatory use of peremptory challenges denies a party the equal protection of the laws guaranteed by the U.S. Constitution. *See Batson v. Kentucky*, 476 U.S. 79, 85, 106 S. Ct. 1712, 1716, 90 L. Ed. 2d 69 (1986).[2] Moreover, the discriminatory use of peremptory challenges denies equal protection of the laws to the potential jurors. *See Powers v. Ohio*, 499 U.S. 400, 409–11, 111 S. Ct. 1364, 1370–71, 113 L. Ed. 2d 411 (1991). Any party has standing to complain of such a violation, even if the party is not a member of the group allegedly affected by the improper strike. *Id.*, 499 U.S. at 415–16, 111 S. Ct. at 1373–74.

---

[2] Although *Batson* involved a race based peremptory strike, courts analyze all allegedly discriminatory strikes according to the steps laid out in *Batson*. *See Guzman v. State*, 85 S.W.3d 242, 245-46 (Tex. Crim. App. 2002).

A trial court follows a three step process to evaluate a claim that a party has exercised a peremptory strike based on gender. *See Snyder v. Louisiana*, 552 U.S. 472, __, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008). First, the party challenging the strike must make a prima facie showing that the other party has used a peremptory challenge to remove a potential juror on the basis of gender. *See id.*; *Purkett v. Elem*, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770, 131 L. Ed. 2d 834 (1995); *Goode v. Shoukfeh*, 943 S.W.2d 441, 445 (Tex. 1997). A prima facie case may be established by relying solely on evidence concerning the other party's exercise of peremptory challenges. *See Batson*, 476 U.S. at 96, 106 S. Ct. at 1723. However, it must also be shown that these facts and any other relevant circumstances raise an inference that the other party used that practice to exclude the potential juror on the basis of gender. *See id.*

Second, if the prima facie showing has been made, the party who challenged the potential juror must come forward with a gender neutral explanation. *See Snyder*, 552 U.S. at __, 128 S. Ct. at 1207; *Batson*, 476 U.S. at 97-98, 106 S. Ct. at 1723-24. A neutral explanation means that the challenge was based on something other than the juror's gender. *See Hernandez v. New York*, 500 U.S. 352, 360, 111 S. Ct. 1859, 1866-67, 114 L. Ed. 2d 395 (1991); *Goode*, 943 S.W.2d at 445. The appellate court does not consider at the second step whether the explanation is persuasive or even plausible. *See Goode*, 943 S.W.2d at 445. The issue for the trial court at this juncture is the facial validity of the explanation. *See Id*. In evaluating whether the explanation offered is gender neutral, a court must determine whether the peremptory challenge violates the Equal Protection Clause as a matter of law, assuming the reasons for the peremptory challenge are true. *See Hernandez*, 500 U.S. at 359, 111 S. Ct. at 1866; *Goode*, 943 S.W.2d at 445. Unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed gender neutral for purposes of the analysis at step two. *See Hernandez*, 500 U.S. at 360, 111 S. Ct. at 1866–67; *Goode*, 943 S.W.2d at 445. It is only upon reaching the third step that the persuasiveness of the justification for the challenge becomes relevant. *See Goode*, 943 S.W.2d at 445.

At the third step, the trial court must determine if the party challenging the strike has proven purposeful discrimination, and the trial court may believe or not believe the explanation offered by the party who exercised the peremptory challenge. *See Id*. at 445–46. As part of that third step, the party challenging the strike must be afforded the opportunity to rebut the explanation for the strike. *See Davis*, 268 S.W.3d at 514–15. Thus, the party challenging the strike must attack the other

3

party's gender neutral reasons as being contrived or pretextual to conceal discriminatory intent. *See Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).[3] The credibility of the other party's reasons for disparate striking of potential jurors can be measured by "the [other party's] demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *See Miller–El v. Cockrell*, 537 U.S. 322, 339, 123 S. Ct. 1029, 1040, 154 L. Ed. 2d 931 (2003) ("*Miller–El I*"). *See* "[A]ll relevant circumstances" must be analyzed. *Davis*, 268 S.W.3d at 511 (quoting *Miller–El v. Dretke*, 545 U.S. 231, 240, 125 S. Ct. 2317, 2325, 162 L. Ed. 2d 196 (2005)). However, the ultimate burden of persuasion remains with the party challenging the strike. *See Goode*, 943 S.W.2d at 446. Once a party has offered a gender neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the party had made a prima facie showing becomes moot. *See Hernandez*, 500 U.S. at 359, 111 S. Ct. at 1866 (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S. Ct. 1478, 1482, 75 L. Ed. 2d 403 (1983)); *Goode*, 943 S.W.2d at 445.

In civil cases, we review a trial court's *Batson* ruling for abuse of discretion. *Davis*, 268 S.W.3d at 515.[4] A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. *Goode*, 943 S.W.2d at 446. The abuse of discretion standard is demanding and requires that deference be given to the trial court, but it is not an insurmountable standard. *See Davis*, 268 S.W.3d at 515. We must be cognizant that "appellate review of alleged *Batson* errors is not a hollow act." *Id.* at 516 (quoting *Snyder*, 552 U.S. at __, 128 S. Ct. at 1207).

## Analysis

At trial, McKenna objected that W & W Services had struck six female members of the venire. Specifically, McKenna objected that W & W Services struck jurors number 4, 14, 15, 22, 23, and 27, and described this as "prima [facie] gender discrimination." One of the attorneys for W & W Services was then sworn. In response to questions from McKenna's attorney, counsel

---

[3] Because Texas criminal jurisprudence on *Batson* procedures is much more developed than the civil jurisprudence, we examine Texas criminal jurisprudence for guidance in applying *Batson* and its progeny to civil matters. *See Goode v. Shoukfeh*, 643 S.W.2d 441, 450 (Tex. 1997) (recognizing that courts of appeals reviewing *Batson* challenges in civil matters have often looked to Texas criminal jurisprudence for guidance).

[4] In criminal cases, Texas appellate courts apply a "clearly erroneous" standard. *See Guzman v. State*, 85

4

explained the reasons for each of the six peremptory challenges.

Counsel testified that juror number 4 works for "ACCESS," and, based on his past experience, those employees are extremely liberal. McKenna claims that "ACCESS" was never defined during the voir dire examination. We note, however, that a potential juror, in response to a question by McKenna's counsel, stated that "ACCESS" is an acronym for "Anderson-Cherokee County Enrichment Service," a mental health clinic run by Anderson and Cherokee Counties. A juror's occupation or profession is a facially gender neutral reason. *See Davis*, 268 S.W.3d at 521; *see also Tompkins v. State*, 774 S.W.2d 195, 205 (Tex. Crim. App. 1987).

Counsel stated further that juror number 14 exhibited a difficult attitude. Specifically, counsel testified that juror number 14 was listening to music, and when another member of the venire asked her to turn it down, she refused. Although the trial court failed to make an explicit finding that juror number 14 behaved in this manner, the court explicitly found that W & W Services' reason for striking juror number 14 was gender neutral. Further, sufficiently specific "demeanor" explanations are facially gender neutral reasons. *See Davis*, 268 S.W.3d at 519. Counsel's explanation of the behavior upon which the peremptory challenge was based is sufficiently specific. *See id*.

To explain his strike of juror number 15, counsel stated that the juror and one of the other attorneys had known each other for many years. Because of a personal matter between the two that arose out of their prior relationship, counsel did not want her on the jury. Counsel assured the trial court that the personal matter "ha[d] nothing whatsoever to do with this case or with her being a woman." This reason is facially gender neutral.

Counsel testified that juror number 22 was sitting next to a lady who did not want to be at jury duty because she was sleepy. He testified further that juror number 22 also stated she did not want to be there. Counsel testified that he struck juror number 22 because he feared she would be inattentive during the trial. The trial court failed to make an explicit finding that juror number 22 said she did not want to be there. However, the trial court explicitly found that W & W Services' reason for striking juror number 22 was gender neutral. Inattentiveness is a facially gender neutral reason for exercising a peremptory strike. *See Dorsey v. State*, 940 S.W.2d 169, 175 (Tex. App.—Dallas 1996, pet. ref'd). Further, sufficiently specific "demeanor" explanations are also facially

S.W.3d 242, 254 (Tex. Crim. App. 2002).

gender neutral reasons. *See Davis*, 268 S.W.3d at 519. And W & W Services identified the conduct of juror number 22 with sufficient specificity.

Counsel testified that juror number 23 stated that she was a social worker. He explained that he struck juror number 23 because W & W Services objected to a social worker, regardless of gender. A juror's occupation is a facially gender neutral reason. *See id.* at 521.

Finally, counsel stated that the husband of juror number 27 was on a prior jury of one of W & W Services' attorneys and was the "one in the jury room that almost hung the jury." Counsel was concerned that his wife would be a similar juror, and decided to exercise a peremptory strike to eliminate her from the venire. This reason is facially gender neutral.

All of the reasons for the strikes proffered by W & W Services' attorney are facially gender neutral. Therefore, when the reasons are assumed to be true, it cannot be said as a matter of law that there has been a violation of the Equal Protection Clause. *See Hernandez*, 500 U.S. at 359, 111 S. Ct. at 1866; *Goode*, 943 S.W.2d at 445. Consequently, the trial court proceeded to the third step of the analysis.

Following the testimony of W & W Services' attorney, the trial court gave McKenna an opportunity to develop a record to demonstrate that the reasons given for the peremptory strikes were pretextual. Instead, McKenna simply reiterated that W & W Services struck six females, and stated that "we think that's not something that would normally occur if it hadn't been for the fact that the woman and – the plaintiff is a woman." An expression of disbelief is not enough to show that a peremptory challenge is pretextual to conceal discriminatory intent. *Mandujano v. State*, 966 S.W.2d 816, 821 (Tex. App.–Austin 1998, pet. ref'd). But in conducting our review, we must examine all relevant factors bearing upon the trial court's decision. *Davis*, 268 S.W.3d at 511.

At the outset, we note that W & W Services used all of its strikes to eliminate females from the venire. This statistic is troubling when viewed in isolation. However, the record shows that 17 of the 24 potential jurors within the strike zone, or 71%, were female. Of these 17 females, W & W Services struck 6, or 35%. Of the remaining 11 females, 8 were actually seated as jurors and comprised 67% of the jury. Because of the high number of females within the strike zone, we cannot say, without more, that the disparity in W & W Services' use of its peremptory strikes is attributable to something other than "happenstance." *See Miller–El I*, 537 U.S. at 342, 123 S. Ct. at 1042 (concluding that disparity in use of strikes resulting in exclusion of 91% of eligible African

6

American venire members could not have occurred by "happenstance"); *Davis*, 268 S.W.3d at 516 ("happenstance" unlikely to produce disparity where defendant struck 83% of African Americans but only 5.5% of other eligible jurors). Furthermore, W & W Services' disproportionate use of peremptory challenges merely supports McKenna's ultimate burden of persuasion. *See Watkins v. State*, 245 S.W.3d 444, 452 (Tex. Crim. App. 2008). But it does not alone establish that W & W Services' explanations of its strikes were pretextual. *See id*.

Second, we note that neither McKenna or W & W Services elicited detailed information about the jurors during voir dire. Moreover, neither party introduced the potential jurors' questionnaires, the jury list, or the strikes of either party into evidence or requested the inclusion of any of these items in the appellate record. Consequently, we cannot conduct a comparative juror analysis. *See Miller–El v. Dretke*, 545 U.S. 231, 241, 125 S. Ct. 2317, 2325, 162 L. Ed. 2d 196 (2005) (*Miller–El II*) ("If the [] proffered reason for striking a black panelist applies just as well to an otherwise–similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step."); *Cantu v. State*, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992) (discussing disproportionate treatment in light of comparative analysis of jurors).

Third, nothing in the record indicates that W & W Services requested a jury shuffle, even though, as previously mentioned, the percentage of females in the jury strike zone was unusually high. *See Watkins*, 245 S.W.3d at 449 (citing [*Miller–El II*], 545 U.S. at 253–55, 125 S. Ct. at [2333]) (utilizing jury shuffle in manner supporting inference of race discrimination to be considered at third stage of *Batson* analysis). Fourth, a review of W & W Services' voir dire examination does not show that it asked males and females contrasting questions on the same subject. *See id.* (use of contrasting questions designed to single out African American venire members for elimination to be considered at third stage of *Batson* analysis).

Fifth, there is no evidence in the record that W & W Services had a history of systematically excluding females from juries. *See Davis*, 268 S.W.3d at 525 (citing [*Miller–El II*], 545 U.S. at [263], 125 S. Ct. at [2338]) (whether defendant had historically excluded African Americans from juries to be considered at third stage of *Batson* analysis). And finally, the reasons provided by W & W Services for the strikes are facially gender neutral when measured by "how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in

7

accepted trial strategy." *See **Miller–El I***, 537 U.S. at 339, 123 S. Ct. at 1040.

In summary, we recognize that W & W Services failed to question the jurors on matters relating to W & W Services' proffered reasons for the peremptory strikes. Nevertheless, based on our review of the entire record, and giving the required deference to the trial court's ruling, we conclude that W & W provided facially gender neutral explanations for its use of peremptory challenges, and that McKenna failed to carry her burden to show that the stated reasons were pretextual. Consequently, we hold that the trial court's decision to deny McKenna's ***Batson*** challenge was not an abuse of discretion. Accordingly, we overrule McKenna's sole issue.

## DISPOSITION

Having overruled McKenna's sole issue, we ***affirm*** the judgment of the trial court.

**BRIAN T. HOYLE**
Justice

Opinion delivered November 12, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

8