Harvey Brown, Justice
This is an appeal from a take-nothing judgment entered after a jury trial in a medical malpractice case. Carolyn Jackson sued Daniel Garber Stroud, M.D., over the death of her husband, which occurred shortly after Stroud performed surgery on him. During voir dire, Stroud, who is Caucasian, used three of his peremptory strikes to remove all black panelists from the panel of potential jurors. Jackson, who is African-American, made a Batson challenge, which the trial court overruled.
Jackson argues that the trial court's ruling was an abuse of discretion because Stroud's race-neutral reasons for striking the black panelists were pretextual. We hold that the record shows that Stroud's reason for striking at least one of the *506 panelists was pretextual. Therefore, we reverse the trial court's judgment and remand for a new trial.
Background
Heart surgeon Daniel Stroud performed bypass surgery on Jeffrey Jackson. Jeffrey died from complications related to the surgery, and his wife, Carolyn Jackson, sued Stroud for medical malpractice.[1]
During voir dire, one of four black panelists was struck for cause. At the conclusion of voir dire, Stroud used peremptory strikes to remove the three remaining black panelists. Jackson made a Batson challenge,[2] which the trial court overruled. No black panelist was empaneled on the jury.
The jury returned a defense verdict, and the trial court signed a take-nothing judgment. Jackson appeals.
Batson Challenge
In her first issue, Jackson contends that the trial court abused its discretion in overruling her Batson challenge. After the trial court dismissed panelists for cause or hardship, Stroud used peremptory strikes to strike the three remaining black panelists-P. Howe, W. Parham, and K. Falls. Jackson made a Batson challenge, arguing that the strikes were racially motivated. Stroud proffered reasons for each strike, and the trial court overruled Jackson's objection. Jackson argues that the trial court's ruling was an abuse of discretion because Stroud's purported reasons for striking the black panelists were pretexts for unlawful racial discrimination. Stroud responds that the trial court properly overruled Jackson's objection because she failed to prove purposeful discrimination.
A. Applicable law and standard of review
Under the Texas Rules of Civil Procedure, each party in a case tried in district court is entitled to six peremptory strikes, which are used to "strike" potential jurors without offering any reason or explanation. TEX. R. CIV. P. 232, 233. While no reason for the strike is required, a peremptory strike may not be based on a number of considerations forbidden by the Constitution, including a potential juror's race. Edmonson v. Leesville Concrete Co. , 500 U.S. 614, 618, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) ; Batson v. Kentucky , 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The racially motivated use of a peremptory strike violates the Equal Protection Clause of the United States Constitution. See Batson , 476 U.S. at 89, 106 S.Ct. 1712 ; see also U.S. CONST . amend. XIV, § 1. The exclusion of even one potential juror on the basis of race invalidates the entire jury selection process and requires a new trial. Davis v. Fisk Elec. Co. , 268 S.W.3d 508, 521 (Tex. 2008) ; Haynes v. Union Pac. R.R. Co. , 395 S.W.3d 192, 197 (Tex. App.-Houston [1st Dist.] 2012, pet. denied).
Named after the seminal Supreme Court decision, an objection that a peremptory strike was based on race is called a Batson challenge. The resolution of a Batson challenge involves a three-step process. Batson , 476 U.S. at 97, 106 S.Ct. 1712 ; Davis , 268 S.W.3d at 514 n.4.
*507 In the first step, the party challenging the peremptory strike must establish a prima facie case of racial discrimination. Snyder v. Louisiana, 552 U.S. 472, 476, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) ; Davis , 268 S.W.3d at 514 n.4 ; Haynes , 395 S.W.3d at 196. To establish a prima facie case, the challenging party may rely on all relevant facts, including any statistical disparity between the percentage of black and nonblack panelists who were struck by the other party. Miller-El v. Dretke , 545 U.S. 231, 239-41, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) ; Haynes , 395 S.W.3d at 196.
In the second step, if the challenging party meets her burden, the burden shifts to the striking party to offer a race-neutral explanation for the strikes. Snyder , 552 U.S. at 476-77, 128 S.Ct. 1203 ; Haynes , 395 S.W.3d at 196. At the second step, the race-neutral explanation is a burden of production only. See Peetz v. State , 180 S.W.3d 755, 758-59 (Tex. App.-Houston [14th Dist.] 2005, no pet.). To satisfy his burden at the second step, the striking party must offer "clear and reasonably specific" reasons for his strikes. Haynes , 395 S.W.3d at 196. The reasons cannot be vague. Moeller v. Blanc , 276 S.W.3d 656, 662 (Tex. App.-Dallas 2008, pet. denied). A vague reason is essentially no reason at all. Id. However, the reasons need not be "persuasive or even plausible" so long as they are clear, reasonably specific, and "based on something other than the juror's race." Goode v. Shoukfeh , 943 S.W.2d 441, 445 (Tex. 1997).
In determining whether the striking party has offered a race-neutral explanation, the trial court does not consider any disparate treatment of panelists or other evidence tending to show that the explanation is pretextual; these matters are considered as part of the third step of a Batson challenge. See Snyder , 552 U.S. at 478, 485, 128 S.Ct. 1203 (comparing struck juror with other jurors to determine whether strike was pretextual in third step of Batson inquiry); Jones v. State , 431 S.W.3d 149, 155 (Tex. App.-Houston [14th Dist.] 2013, pet. ref'd) (considering disparate treatment of panelists as part of third step); McKenna v. W & W Servs., Inc. , 301 S.W.3d 336, 341 (Tex. App.-Tyler 2009, pet. denied) (noting that "only upon reaching the third step" does the "persuasiveness of the justification" become "relevant"). Rather, the trial court simply determines whether the explanation is facially valid. Purkett v. Elem , 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).
At this second step, nearly any race-neutral reason will suffice-the striking party can say he struck the juror because of the juror's occupation or even because of the juror's appearance. See Snyder , 552 U.S. at 478-79, 485, 128 S.Ct. 1203 (treating explanation that panelist was struck because he was student-teacher as race-neutral at step two but concluding it was pretextual at step three); Purkett , 514 U.S. at 769, 115 S.Ct. 1769 (holding that striking panelist "because he had long, unkempt hair, a mustache, and a beard" is facially race-neutral reason that satisfies striking party's burden at step two); Morgan v. City of Chicago , 822 F.3d 317, 327 (7th Cir. 2016) ("At this second step, nearly 'any race-neutral reason' will suffice."); cf. McKenna , 301 S.W.3d at 343 ("A juror's occupation or profession is a facially gender neutral reason."). "Unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral for purposes of the analysis at step two." Goode , 943 S.W.2d at 445.
In the third step, if the striking party has offered a facially race-neutral *508 explanation, the challenging party must prove purposeful racial discrimination. Snyder , 552 U.S. at 477, 128 S.Ct. 1203 ; Davis , 268 S.W.3d at 514 n.4. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the peremptory strike." Davis , 268 S.W.3d at 515 n.4 (quoting Goode , 943 S.W.2d at 446 ) (quotations and brackets omitted). At the third step, the "persuasiveness of the justification for the peremptory strike" is the "critical" issue, Haynes , 395 S.W.3d at 196, and "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." Purkett , 514 U.S. at 768, 115 S.Ct. 1769.
In making its pretextual determination, the trial court must consider the totality of the circumstances. The trial court should pay special attention to certain factors that have been recognized as especially probative, which, in the context of a Batson challenge to struck black panelists, includes:
• whether there is a statistical disparity between the percentage of black and nonblack panelists who were struck;
• whether the record supports or contradicts the striking party's explanation for its strikes;
• whether the striking party questioned the black panelists before striking them; and
• whether there is any disparate treatment of black panelists, i.e., whether the striking party's explanations for striking black jurors apply equally well to nonblack jurors who were not struck.
See Miller-El , 545 U.S. at 239, 125 S.Ct. 2317 ; Haynes , 395 S.W.3d at 196 ; Jones , 431 S.W.3d at 156 ; see also Davis , 268 S.W.3d at 519 (failure to question panelist about reason given for strike suggests pretext).
In conducting a comparative analysis to determine whether there has been any disparate treatment of black panelists-the last factor listed above-the struck panelists need not be compared "only to jurors who are identical in all respects (save race): 'A per se rule that a defendant cannot win a Batson claim unless there is an exactly identical white juror would leave Batson inoperable; potential jurors are not products of a set of cookie cutters.' " Davis , 268 S.W.3d at 512 (quoting Miller-El , 545 U.S. at 247 n.6, 125 S.Ct. 2317 ). "The credibility of the other party's reasons for disparate striking of potential jurors can be measured by the other party's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." McKenna , 301 S.W.3d at 342 (quoting Miller-El v. Cockrell , 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ) (brackets and quotations omitted).
Some of the relevant factors, including especially disparate treatment, are more easily reviewed on appeal, with the benefit of a transcript. Davis , 268 S.W.3d at 525. For this reason, the third step's "totality of the circumstances" analysis has been described as placing a "heavy burden" on trial courts. Id. But without such a "searching inquiry into the basis of the challenged strikes, Batson would become a 'mere exercise in thinking up any rational basis.' " Id. (quoting Miller-El , 545 U.S. at 252, 125 S.Ct. 2317 ).
We review a trial court's ruling on a Batson challenge for an abuse of discretion, considering all relevant circumstances to determine whether race was a factor in the exercise of a peremptory strike. Davis , 268 S.W.3d at 515, 526. If we conclude that a panelist was improperly *509 excluded on the basis of race, we must reverse the trial court's judgment and remand for a new trial. See ids="8197749" index="70" url="https://cite.case.law/sw3d/268/508/#p521">id. at 526.
B. Based on the record, Stroud's strike of Howe was not race-neutral
1. Step one: The prima facie inquiry was mooted
Once the striking party offers a race-neutral explanation for the strikes and the trial court rules on the ultimate question of intentional discrimination, the preliminary issue of whether the challenging party made a prima facie case becomes moot. Goode , 943 S.W.2d at 445. At the Batson hearing, rather than disputing Jackson's prima facie case, Stroud offered explanations for his strikes, and the trial court ruled on them, rendering the preliminary issue of a prima facie case moot. Id.
2. Step two: Stroud provided race-neutral reasons for his strikes
Turning to the second step, we must determine whether Stroud presented race-neutral reasons for his strikes. Davis , 268 S.W.3d at 514 n.4. At this step of the analysis, we do not consider whether Stroud's proffered reasons are persuasive or even plausible. Purkett , 514 U.S. at 767-68, 115 S.Ct. 1769 ; Goode , 943 S.W.2d at 445. Rather, we simply determine whether they are facially valid. Purkett , 514 U.S. at 768, 115 S.Ct. 1769. That is, we determine whether they are "based on something other than the juror's race." Goode , 943 S.W.2d at 445.
Stroud provided reasons for striking each of the three black panelists. He said he struck Howe because she was a certified nursing assistant. He said he struck Parham because she appeared disinterested and was dozing off during voir dire. And he said he struck Falls because Falls had said that he believed his brother had died as a result of medical malpractice. Each of these explanations is based on something other than the juror's race. Thus, we turn to the third step.
3. Step three: Stroud's reason for striking Howe was pretextual
At the Batson hearing, the trial court overruled Jackson's objection, implicitly finding that there was no showing of purposeful discrimination. The issue before us, then, is whether the trial court abused its discretion in failing to find purposeful discrimination in Stroud's use of peremptory strikes against Howe, Parham, and Falls.
We consider the totality of the circumstances surrounding Stroud's strikes, beginning with his strike against Howe. See Davis , 268 S.W.3d at 525. There are several factors that tend to show that Stroud's strike against Howe was racially motivated and that his race-neutral explanation was pretextual.
First, there is a statistical disparity between the percentage of black and nonblack panelists who were struck by Stroud. After the trial court dismissed panelists for cause or hardship, the panel consisted of 28 remaining members, three of whom were black and 25 of whom were nonblack. Stroud struck 100% of the remaining black panelists but struck only 12% of the remaining nonblack panelists. Although this disparity is less probative given the relatively small sample size,[3] it tends to suggest that Stroud's strikes against the black panelists were racially motivated. See Haynes , 395 S.W.3d at 197 (holding that striking 67% of black panelists but only *510 11% of nonblack panelists tends to show discrimination).[4]
Second, at the hearing, Stroud failed to explain why Howe's job as a CNA was his reason for striking her. Compare with McKnight v. State , No. 03-08-00105-CR, 2009 WL 722261, *8-9 (Tex. App.-Austin Mar. 20, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that prosecutor's explanation for striking black CNA was genuine when prosecutor explained that he always struck all CNAs because of his belief that CNAs favored defense and his negative past experience with CNAs who served as jurors and witnesses).
During voir dire, Howe said that she was a CNA at a "senior citizen facility" whose job consisted of "just follow[ing] instructions." She specifically said that nothing from her CNA experience would prevent her from being fair and impartial. At the hearing, when Stroud offered race-neutral reasons for the strikes, he stated that he struck Howe because she "is a CNA, certified nursing assistant." The trial court then afforded Stroud the opportunity to further explain himself, but Stroud declined to do so. Stroud made no attempt to explain what it was about Howe's job that made him think she would be a bad juror. And nothing in the record otherwise indicates why Howe's job might have influenced Stroud to strike her.
Surviving a Batson challenge is not a "mere exercise in thinking up any rational basis." Davis , 268 S.W.3d at 525 (quoting Miller-El , 545 U.S. at 252, 125 S.Ct. 2317 ); see Miller-El , 545 U.S. at 252, 125 S.Ct. 2317 (noting that, "when illegitimate grounds like race are in issue," striking party "simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives"). A reason that is "implausible or fantastic" may be viewed as a pretext. Purkett , 514 U.S. at 768, 115 S.Ct. 1769. Based on the record, the reason offered by Stroud for striking Howe is completely arbitrary. Howe's job, without any explanation, is not a plausible justification for striking her.
In his appellate brief, Stroud explains that he struck Howe because (1) a CNA is a job that requires little education and (2) he was concerned that Howe's employment in the healthcare industry would lead her to presume expertise in this medical malpractice case and consider her own experience and knowledge instead of the evidence presented at trial. A reason that was never raised in the trial court cannot justify a strike on appeal. Davis , 268 S.W.3d at 521 ; Haynes , 395 S.W.3d at 196.
Even if we were to consider the explanations Stroud provides in his appellate brief, those explanations are unpersuasive. Stroud did not question Howe on the subjects about which he now claims to have been concerned. He did not ask her whether she was willing to follow the trial court's instruction and consider only the law and the evidence.[5] Nor did he ask whether she would refrain from telling the other jurors about her own experiences, including any special medical knowledge she might possess *511 or presume to possess.[6] Stroud's failure to engage in any meaningful voir dire examination on the issues that he claims concerned him suggests that his explanation on appeal is pretextual. Davis , 268 S.W.3d at 519 (lack of questioning or mere cursory questioning before exercising peremptory strike is evidence of pretext).
Moreover, a comparative juror analysis shows disparate treatment of Howe. See Miller-El , 545 U.S. at 241, 125 S.Ct. 2317 (noting that comparative analysis is more "powerful" evidence of race-based strikes than "bare statistics"). Stroud never expressed any concern over the two nonblack panelists without college degrees, one of whom had the same amount of education as Howe, and the other of whom had less. Neither was struck by Stroud, and both were empaneled on the jury. Nor did Stroud ever express concern over the nonblack panelists employed in the healthcare industry, including a registered nurse and hospital unit coordinator, even though his explanation for striking Howe applies equally well to them. Stroud's failure to strike or at least express concern over these panelists indicates that his reason for striking Howe was pretextual.
Conclusion
Based on the record before us, we conclude that Jackson demonstrated that Stroud's proffered explanation of his strike of Howe was pretextual.
First, the evidence demonstrated a statistical disparity between the percentage of black and nonblack panelists who were struck by Stroud. Second, at the hearing, Stroud offered no explanation of why Howe's job as a CNA was his reason for striking her, and there is no obvious link between employment as a CNA and suitability for jury service in this case. Third, the record indicates that the explanations he offers for the first time on appeal are pretextual. The record shows that Stroud failed to ask panelist Howe any questions related to his belatedly-expressed concerns about her education, her willingness to decide the case based on the evidence rather than her experiences, or her ability to follow an instruction from the trial court to refrain from informing jurors of special medical knowledge she has acquired during her career. See Davis , 268 S.W.3d at 519 (lack of questioning or mere cursory questioning before exercising peremptory strike is evidence of pretext). And the record reveals disparate treatment of Howe, a black panelist, compared to nonblack panelists who either had comparable jobs or levels of education.
Stroud may have had reasons for believing that these nonblack panelists were distinguishable from Howe, but the record does not contain them. Simply put, without a fuller explanation, the justification for Stroud's peremptory strike of Howe was not persuasive and "cannot reasonably be accepted." Davis , 268 S.W.3d at 521 (quoting Miller-El , 545 U.S. at 247, 125 S.Ct. 2317 ); see Haynes , 395 S.W.3d at 196 ("The persuasiveness of the justification for the peremptory strike is critical."). Thus, we conclude, based on the totality of the circumstances, that Stroud's strike of Howe was not race-neutral. See Davis , 268 S.W.3d at 526 ("After examining the totality of the circumstances, we conclude that race explains Fisk's strikes ... better than any other reason.").
Just as in Davis and Haynes , we have no reason to doubt that the attorney responsible for the challenged peremptory strikes in this case is "pure of heart," and we assume that he is. Our review is focused *512 on the quality of the record, and based on that record, we hold that the trial court abused its discretion in overruling Jackson's Batson challenge.[7] Accordingly, we sustain Jackson's first issue,[8] reverse the trial court's judgment, and remand for a new trial.

Jackson sued individually and on behalf of her husband and their adult children.

Batson v. Kentucky , 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ; see Edmonson v. Leesville Concrete Co. , 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) ; see also Davis v. Fisk Elec. Co. , 268 S.W.3d 508 (Tex. 2008).

See Hassan v. State , 369 S.W.3d 872, 876 (Tex. Crim. App. 2012) (explaining that "a statistical disparity could easily result from happenstance if the sample size is extremely small").

See Miller-El , 545 U.S. at 240, 125 S.Ct. 2317 (holding that prosecutor's striking 91% of black panelists but only 11% of nonblack panelists was evidence of racial discrimination); Davis , 268 S.W.3d at 516 (holding that defendant-employer's striking 83% of black panelists but only 5.5% of nonblack panelists was evidence of racial discrimination).

See Tex. R. Civ. P. 226(a) (requiring trial court to instruct jurors that their "conclusions about this case must be based only on what [they] see and hear in th[e] courtroom because the law does not permit [them] to base [their] conclusions on information that has not been presented to [them] in open court").

See Tex. R. Civ. P. 226(a) (requiring trial court to instruct jurors to "not tell other jurors about [their] own experiences or other people's experiences").

Because we hold that the trial court abused its discretion in overruling Jackson's objection with respect to Howe, we need not consider whether it also abused its discretion in overruling Jackson's objection with respect to Parham and Falls. See Snyder v. Louisiana , 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008).

Because we sustain Jackson's first issue, we need not reach her second issue, in which she contends that the trial court abused its discretion by empaneling a juror who expressed bias in favor of Stroud.