**AFFIRMED and Opinion Filed August 19, 2019**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-18-01035-CV

### REJINA CHATTERJEE, Appellant
### V.

### SUBRATA BANERJEA, Appellee

**On Appeal from the 469th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-52424-2016**

## MEMORANDUM OPINION
Before Justices Burns, Richter[1], and Rosenberg[2]
Opinion by Chief Justice Burns

Rejina Chatterjee appeals the trial court's property division in her divorce from Subrata Banerjea. Finding several of Rejina's complaints waived for inadequate briefing or failure to raise them in the trial court, and finding no reversible error in the remainder, we affirm the trial court's judgment.

**I.**

The parties were married for 24 years and have one child. Both Rejina and Subrata are from India and although they were Texas residents for many years, each maintained close contact

---

[1] The Hon. Martin Richter, Justice of the Court of Appeals for the Fifth District of Texas at Dallas, Retired, sitting by assignment.

[2] The Hon. Barbara Rosenberg, Justice of the Court of Appeals for the Fifth District of Texas at Dallas, sitting by assignment.

1

with family and others in India, travelled frequently to India, and borrowed from or invested with persons in India.

Subrata was highly educated and successful in his employment and had worked for several large well-known companies providing consulting assistance to global banks with respect to their growth, efficiency, and risk management. While employed by KPMG India, Subrata's income was deposited in an account at a bank in India. Subrata's annual salary exceeded $500,000. Rejina asserted that during the marriage, Subrata controlled virtually all of their assets.

During the marriage, Rejina earned an MBA. For a few years she worked for a large accounting firm, and a later, a bank. The parties owned two Duncan Donut franchises (the donut franchises) for which Rejina "kept the books." Rejina also managed the day-to-day operations of each store, although the parties disagreed about the length of time she managed the franchises. Rejina purchased a signature stamp and sometimes allowed the parties' bookkeeper to use the signature stamp for the donut franchises' payroll when she travelled. For at least some period of time, Rejina received a $60,000 salary for managing the donut franchises, but later was allowed to withdraw only a few thousand dollars each month from the donut franchises' accounts to use at her discretion. Rejina also obtained her real estate license, but had no earnings attributable to her licensure.

In her petition, at a contempt hearing discussed below, and during trial, Rejina alleged Subrata fraudulently depleted the marital estate and breached his fiduciary duty to Rejina as his spouse and business partner. Specifically, she alleged Subrata had encumbered the parties' home and businesses without her knowledge (ownership of the parties' marital residence was in Subrata's name only), purchased stocks and other investments without her knowledge, transferred and failed to disclose the extent and value of the community estate, and used the businesses' accounts to pay personal, nonbusiness expenses.

Both parties were represented by counsel throughout the proceedings below and Subrata changed lawyers at least four times. The trial court entered standard temporary orders. Because Subrata failed to produce documents and information regarding certain bank accounts and assets, Rejina issued more than 18 third-party subpoenas seeking financial information about the parties' bank accounts, assets, and Subrata's earnings.

Rejina also filed a motion to compel and four separate motions to enforce the Temporary Orders, including one motion filed after trial. After an evidentiary hearing, the trial court found Subrata in contempt and ordered him to return funds transferred in violation of the Temporary Orders, reverse certain transactions by which he had encumbered community property or converted liquid assets to illiquid, disclose all property removed from a Bank of America safe deposit box, compelled him to produce monthly bank statements for certain accounts, and fined him. Following Subrata's motion to reconsider or clarify, the trial court suspended its order requiring Subrata's commitment "until further order of the court." The trial court made no further ruling regarding Subrata's contempt, and neither the Final Decree nor the findings of fact and conclusions of law reference the contempt. At trial, Subrata's compliance with the order compelling production was disputed.

After Subrata filed his own motion for enforcement, the trial court also ordered Rejina to identify property removed from a different safe deposit box and provide the current location of that property. Rejina also filed a motion to equalize attorney's fees, which the trial court carried through trial. Both parties and at least one expert were deposed.

The case was tried to the court shortly after the hearing on Rejina's motion to enforce and for contempt. At trial, both parties and Rejina's forensic accounting and hand-writing experts testified. After the court overruled a motion to exclude the forensic accountant's testimony, the expert testified that a large amount was "missing" from the community estate, and that Subrata

–3–

had failed to produce, among other items, approximately two years' of bank statements for one primary account he controlled, year-end pay stubs for three years, and information about a large bonus expected within days of the trial's expected conclusion. Many of the financial expert's assumptions and conclusions, however, were challenged on cross-examination. The handwriting expert testified that both Rejina's signature and printed name on a power of attorney purportedly signed in India were likely made by a stamp or some other cut and paste method. The handwriting expert's testimony was challenged through Rejina's cross-examination, during which she admitted that the signature stamp purportedly used to add Rejina's signature to the power of attorney was in her possession at the time the document was signed and notarized. Each party was also examined about alleged infidelity.

Six months after trial, the trial court entered a memorandum opinion, granting the divorce on the "grounds of insupportability," dividing community assets and liabilities, but also requiring the parties to submit a final order. Three months later, the court heard arguments on a motion to enter a final decree. After arguments each party submitted affidavits providing additional and current information about the assets and liabilities of the parties' businesses. After hearing a second motion to enter and following the court's ruling on Rejina's request for clarification of three items in the memorandum opinion, the trial court entered the final decree of divorce (the Final Decree).

The Final Decree divided the parties' assets and liabilities, and provided that all requested relief not expressly granted was denied. Pursuant to Rejina's request, the court subsequently entered findings of fact and conclusions of law in which it stated it had "carefully listened to and evaluated testimony from witnesses," including Rejina, Subrata, and experts; valued the specific assets and liabilities in the estate; and as with the memorandum opinion, granted the divorce on grounds of insupportability only. The court did not find any fraud, nor did it find any aggregate

–4–

value for the estate or assign percentages to either party. The findings of fact and conclusions of law, however, included an itemized list of the community property assets and debts, valuations of most assets and liabilities, and bank names or account numbers for many. Each party was awarded one of the donut franchises. Rejina did not request any amended, supplemental or additional findings of fact or conclusions of law.

Pro-se following the hearing on the motion to enter, Rejina appealed[3] and asks this Court to reconstitute the estate and modify the asset division. She contends the trial court abused its discretion[4] by (1) excluding evidence regarding assets Rejina claimed were missing from the estate; (2) including certain jewelry in the property division although Rejina claimed no evidence demonstrated the existence of those assets; (3) including a Rolex watch in the property division, although Rejina also asserted no evidence except Subrata's testimony demonstrated the existence of the watch; (4) failing to require Subrata to pay Rejina's attorney's and expert fees; (5) inequitably dividing the community estate as a result of excluding from the property division certain assets Rejina contends were fraudulently transferred in breach of Subrata's fiduciary duties; (6) including assets located in India in the division; (7) failing to "follow through" and enter orders of commitment after finding Subrata in contempt of court for violations of certain Temporary Orders; and, (8) denying Rejina the opportunity for appellate representation by not ruling on Rejina's motions for temporary relief. We address each in turn.

**II.**

### A.     The Standard Of Review In Divorce Proceedings

---

[3]This Court requested and Rejina filed an amended brief because the original brief did not contain a concise statement of the case, the course of proceedings, and the trial court's disposition of the case supported by record references.

[4] Rejina lists eight discrete issues in her "issues presented", but in the argument section of her brief includes ten numbered arguments, several of which appear to relate to her first issue. We nonetheless address the issues presented as they are stated in her brief.

Trial courts must "order a division of the parties' estate in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE § 7.001. Numerous factors are considered in making the division, including the disparity of incomes or earning capacities of the parties, "benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property." *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). Broad discretion governs division of the community estate, and all reasonable presumptions are indulged in favor of such discretion. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Murff*, 615 S.W.2d at 698–99 (appellate court presumes trial court properly exercised discretion in dividing marital estate). The party complaining about the property division must demonstrate from the evidence that "the division was so unjust and unfair as to constitute an abuse of discretion." *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.).

Under the abuse of discretion standard applied in family law cases, legal and factual sufficiency challenges are relevant factors in determining whether the trial court abused its discretion, rather than independent grounds for asserting error. *Moore v. Moore*, 383 S.W.3d 190, 198 (Tex. App.—Dallas 2012, pet. denied). In evaluating an abuse of discretion in this context, we first consider whether the trial court had sufficient evidence upon which to exercise its discretion, then determine if the trial court erred in the application of its discretion. If some evidence of a "substantive and probative character" supports the trial court's decision, no abuse of discretion occurred. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d at 383.

An appellate court may only determine whether the trial court abused its discretion in dividing the estate; it cannot revise the trial court's division. If we find reversible error materially

affecting the trial court's just and right division of the property, we must remand. *Puntarelli v. Peterson*, 405 S.W.3d 131, 136 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

**B.      Waiver**

Rejina's brief includes almost no reference to the record.  Each issue raised as error is accordingly subject to waiver on that basis. *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008) (per curiam) ("We will not consider factual assertions that appear solely in briefs and are not supported by the appellate record."); *In re J.A.M.R.*, 303 S.W.3d 422, 425 (Tex. App.—Dallas 2010, no pet.) ("The law is well-settled that to present an issue to this Court, a party's brief shall contain, among other things, a clear and concise argument for the contentions made with appropriate citations to authority and the record."); TEX. R. APP. P. 38.1(i).  As noted previously by this Court, if we assume the responsibility for scouring the record to find support for a contention, we abandon our role as judges and instead become advocates. *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.).  To the extent we are able to ascertain the basis for Rejina's arguments without becoming her advocate, however, we nonetheless consider Rejina's issues below.

Rejina's fifth, seventh and eight issues are waived for deficient briefing. We are unable to determine the factual basis for Rejna's fifth issue.  She queries whether the trial court abused its discretion

> in not taking into consideration the breach of fiduciary duty and hence unreasonably and unjustly accepted the explanations for the money transfers as true. This resulted in an inequitable distribution of assets that did not take into consideration my rights to the estate.

Except for two authorities which address fraud in the marital context, Rejina provides no further argument or discussion in support of this issue, nor does she provide any record citations directing us to the money transfers to which she is referring.  Because we are unable to discern the specific complaint she is asking us to consider, her brief fails with respect to her fifth issue. *See Bolling*.

315 S.W.3d at 895–96 ("[R]ule 38.1(i) calls for the brief to guide us through the appellant's argument with clear and understandable statements of the contentions being made. If we must speculate or guess about what contentions are being made, then the brief fails.").   We overrule Rejina's fifth issue.

In her seventh issue, Rejina contends by "failing to follow through with its contempt of court ruling" the trial court allowed Subrata to continue looting assets awarded to her under the decree, "even after the divorce."[5]   In her eighth and final issue, Rejina asserts that by failing to rule on her request for legal fees for the appeal, she was denied the "opportunity of legal representation."  Rejina provides neither record citations nor authority with respect to these issues, and because they are accordingly waived, we overrule Rejina's seventh and eighth issues.

## C.     Remaining Issues

### 1.  "Excluded Evidence Regarding Missing Funds"

In her first point of error, Rejina asserts the trial court abused its discretion in "excluding critical evidence presented at trial when it did not rule on the $1.1 million in missing funds." Rejina's arguments in support are numerous.  Rejina argues the existence of the missing funds was proved through third-party documents, including bank records.  She asserts by dividing some assets originally included in the missing category but failing to add all of the allegedly missing funds back into the estate before dividing it, the court ignored evidence of these funds.  Rejina, however, fails to identify any excluded evidence and does not identify any ruling to which she objects.  Because we are unable to determine which specific assets or evidence Rejina complains about, we accordingly find any error with respect to exclusion of evidence regarding the "missing funds" waived.  *See Belt v. Comm'n for Lawyer's Discipline,* 970 S.W.2d 571, 574-75 (Tex.

---

[5] As noted below, however, we add that the trial court has continuing jurisdiction to enforce the Final Decree in the event Subrata has not complied with it.

App.—Dallas 1997, no writ) (party objecting to exclusion of evidence must show the evidence was controlling on a material issue in the case and not cumulative); *Brooks v. Batchelor*, No. 05-13-00401-CV, 2014 WL 1856844, at *3 (Tex. App.—Dallas May 8, 2014, pet. denied) ("[F]ailure to provide citations to the record also results in waiver of the issue on appeal.").

Further, the trial court did not make a specific finding as to fraud and Rejina did not request amended or supplemental findings of fact or conclusions of law. After a trial court issues initial findings of fact and conclusions of law, rule 298 allows any party to request additional or amended findings or conclusions. TEX. R. CIV. P. 298. Failing to request amended or additional findings of fact or conclusions of law, however, waives the right to complain on appeal about the initial findings and conclusions. *Dallas Morning News Co. v. Bd. of Trustees of Dallas Indep. Sch. Dist.*, 861 S.W.2d 532, 538 (Tex. App.—Dallas 1993, writ denied); *Smith v. Smith*, 22 S.W.3d 140, 150 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (appellant waived right to complain on appeal about any asserted errors in findings of fact and conclusions of law by failing to request additional findings and conclusions). Thus, to the extent Rejina's asserted error rests on the trial court's failure to find fraud, her failure to request an amended or supplemental factual finding or conclusion of law waives the issue.

Even if we ignored these waivers, we find no error. Rejina's first issue may be construed as a challenge to the trial court's failure to find fraud or breach of fiduciary duty and reconstitute the estate prior to division, based on Rejina's argument that the court ignored evidence regarding the funds Rejina claims Subrata misappropriated. "With respect to factual matters, a trial court abuses its discretion if, on the evidence, it reasonably could have reached only one decision and failed to do so." *Moeller v. Blanc*, 276 S.W.3d 656, 660 (Tex. App.—Dallas 2008, pet. denied). At trial, Rejina and her expert testified regarding approximately one million dollars that the expert was unable to trace and therefore concluded was in Subrata's possession and control through his

purported fraud on the estate. On cross-examination, the expert's conclusions were challenged as unreliable since (1) Rejina failed to produce records for multiple accounts that she had not disclosed to the expert, and (2) the expert also failed to obtain and review extensive documents regarding accounts owned or controlled by Subrata. The expert also testified, however, that the gap in information and documents related to accounts owned or controlled by Subrata was caused by Subrata's failure to produce those documents and provide the missing information.[6] Based on the evidence introduced at trial, we cannot conclude that the trial court abused its discretion in rejecting the expert's testimony regarding Subrata's alleged fraud and misappropriation of funds and thus not assigning the entire value of the missing funds to Subrata before dividing the estate. *See In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d at 383 ("A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision."); *see also McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (trier of fact, presented with conflicting evidence, may believe one witness and disbelieve others, resolve conflicts in testimony of any witness, or accept lay witness testimony over expert testimony).

Similarly, we find no error if we construe Rejina's first issue as an argument that the trial court abused its discretion by refusing to reconstitute the estate based on Rejina's assertion that Subrata committed fraud by encumbering the parties' businesses and home and by making and repaying various loans, all without her knowledge or consent. "A presumption of fraud on the community arises when one spouse disposes of the other spouse's one-half interest in community property without the other's knowledge or consent." *Miller v. Miller*, No. 14-17-00293-CV, 2018 WL 3151241, at *5 (Tex. App.—Houston [14th Dist.] June 28, 2018, no pet.). If the presumption

---

[6] We note the documents and information Subrata failed to produce appear to fall within the scope of the trial court's order compelling production.

arises, the burden of proof then shifts to the spouse who made the transfers to prove the fairness of the disposition. *Id.*

Subrata testified Rejina was aware of each loan and signed various notes or other documents evidencing and consenting to the loans, including granting a power of attorney to Subrata which was purportedly signed by Rejina during a trip to India. The parties introduced conflicting evidence regarding Rejina's knowledge of and participation in obtaining various loans, including a home equity loan on the parties' residence, and whether Rejina was in India at the time the power of attorney was signed. The trial court was within its discretion to disbelieve Rejina and her expert, in which case the presumption of fraud did not arise. *See McGalliard,* 722 S.W.2d at 697; *see also In re Doe 4*, 19 S.W.3d 322, 325 (Tex. 2000) ("[B]ecause trial courts can view a witness's demeanor, they are given great latitude in believing or disbelieving a witness's testimony, particularly when the witness is interested in the outcome."). Because some evidence supported Subrata's contention that Rejina was aware of the loans and encumbrances, the trial court did not abuse its discretion by refusing to reconstitute the estate by adding back in the funds Rejina contends were misappropriated through loans and encumbrances. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d at 383. We overrule Rejina's first issue.

### 2. Certain Jewelry Awarded to Rejina

In her second issue, Rejina asserts the trial court abused its discretion by finding the value of certain jewelry owned by the community was $139,800 and awarding it to Rejina, because she contends no evidence demonstrated the jewelry existed. Contrary to Rejina's argument, however, Rejina's own itemized inventory of the jewelry at issue was admitted into evidence. Rejina's inventory did not include any valuation, but Subrata valued the same jewelry at $139,800. Rejina also testified that the jewelry, previously in her safe deposit box, was currently in Rejina's lawyers' possession. Subrata also introduced into evidence photographs of Rejina wearing some of the

–11–

jewelry in issue. Because both parties conceded the jewelry's existence and the trial court valued it based on the only evidence available, the trial court did not abuse its discretion by including the jewelry in the estate and valuing it at $139,800. *See Young v. Young*, 168 S.W.3d 276, 285 (Tex. App.—Dallas 2005, no pet.) (in reviewing trial court's valuation of any particular assets, we consider whether sufficient evidence supported the valuation); *Wallace v. Wallace*, 623 S.W.2d 723, 725 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ dism'd) ("It is the responsibility of the parties to the suit to produce evidence of the value of various properties in order to provide the trial judge with a basis upon which to make the division.").

In her recitation of the facts, Rejina also contends the jewelry was given to her by her parents and was thus her separate property. "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE § 3.003. The spouse challenging the presumption must establish by clear and convincing evidence that the disputed property is separate property. *Zagorski v. Zagorski*, 116 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2003, pet denied). Because she directs us to no evidence in the record in support of the separate nature of the jewelry, we also conclude the trial court did not abuse of discretion in finding that the jewelry was community property. We overrule Rejina's second issue.

### 3. Rolex Watch Awarded to Rejina

In her third issue, Rejina argues the trial court abused its discretion by including a missing Rolex watch in the community estate and valuing it at $11,000, contending "there was no evidence of the existence of the watch except in Appellee's testimony." Similarly, Rejina contends it was "unreasonable and totally unjust" for the court to believe Subrata rather than Rejina with respect to the existence of the watch, and asserts that since Subrata was "claiming the fraud it is his burden to prove" that Rejina took the watch.

–12–

Rejina's argument that the trial court believed Subrata's testimony rather than Rejina's demonstrates the justification for overruling the issue. The trial court had considerable discretion to weigh the credibility of the witnesses and in crediting Subrata's testimony and rejecting Rejina's, did not abuse its discretion. *See Bush v. Bush*, 336 S.W.3d 722, 729 (Tex. App. – Houston [1st Dist.] 2010, no pet.) (no abuse of discretion where trial court has sufficient evidence upon which to exercise its discretion and decision was not arbitrary, unreasonable, or without reference to guiding rules or principles); *see also McGalliard,* 722 S.W.2d at 697. We overrule Rejina's third issue.

### 4. Attorney and Expert Fees

In in her fourth issue, Rejina complains the trial court erred by not ordering Subrata to pay her attorneys' and experts' fees, which she contends were incurred to discover and prove Subrata's fraud. In support, Rejina attached to her brief a summary purporting to quantify the trial court's property division. The summary, however, is not part of the record and we therefore do not consider it. *See Perry v. Kroger Stores, Store No. 119*, 741 S.W.2d 533, 534 (Tex. Civ. App.—Dallas 1987, no writ).

In making a just and right division of the estate, attorney's fees are one factor the court may consider. *Haggard v. Haggard*, 550 S.W.2d 374, 379 (Tex. Civ. App.—Dallas 1977, no writ) ("The award of attorney's fees is one factor which the trial court may take into consideration in dividing the community estate, and the court has broad discretion in deciding whether attorney's fees should be charged against the other spouse."). The trial court's fourth conclusion of law states that the court considered numerous factors, including the unreasonable amount of attorney's fees expended by either party. Further, the trial court heard testimony from Subrata that more than $500,000 had been billed to both spouses, while Rejina testified she paid her attorneys approximately $130,000 and owed approximately the same amount.

The trial court did not make any specific finding as to the percentage of the estate awarded to either party. Moreover, the record does not include evidence valuing the donut franchises awarded in the division; one to Subrata and one to Rejina. It is thus not possible for this Court to assess the percentage division of the estate property. Indulging all inferences in favor of the trial court's division, however, and based on the extensive evidence in the record regarding each party's capacities and abilities, business opportunities, education or other relevant factors, we find no abuse of discretion with respect to the trial court's treatment of attorneys' and experts' fees, or the division of the remainder of the estate. We overrule Rejina's fourth issue.

### 5. Assets Outside of the United States

In her sixth issue, Rejina contends the trial court erred by "granting a judgment that could not be implemented" in the United States and thus denied her due process. The issue rests upon Rejina's assertion that in awarding Subrata the full amount of the IRA account valued at $350,000, while awarding her "an amount of about $26,000 in Indian Rupees from an account in India" and not within Rejina's control, and a 50% share of Subrata's Indian pension fund, the judgment awarded her relief that could not be enforced in the United States. As with every other issue, Rejina fails to include any record citations regarding the property about which she complains. Even if not waived, however, the issue lacks merit.

First, the trial court's personal jurisdiction over Subrata was not challenged. A trial court with personal jurisdiction over the parties also possesses jurisdiction to require the parties to convey their respective property, even real estate, located outside of Texas, incident to a divorce. *Griffith v. Griffith*, 341 S.W.3d 43, 56–57 (Tex. App.—San Antonio 2011, no pet.). Likewise, section 7.002 of the Texas Family Code requires the trial court to order a division of real and personal property "wherever situated" in a manner that the court deems just and right, including "property that was acquired by either spouse while domiciled in another state and that would have

–14–

been community property if the spouse who acquired the property had been domiciled in this state at the time of the acquisition." TEX. FAM. CODE § 7.002(a). Thus, the trial court's jurisdiction over Subrata extended to community assets he controlled outside of Texas. *See Griffith*, 341 S.W.3d at 56–57 (court presiding over divorce may exercise its equitable authority to order one party to convey assets located outside of Texas to the other spouse, incident to division of community estate). To the extent Subrata fails to comply in transferring ownership and control over the assets located in India but awarded to Rejina, the trial court's jurisdiction over Subrata and its continuing ability to enforce the judgment provide Rejina with remedies to enforce the judgment. *In re Provine*, 312 S.W.3d 824, 829–30 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("A court that rendered divorce decree generally retains continuing subject-matter jurisdiction, however, to enforce and to clarify the divorce decree's property division."); TEX. FAM. CODE § 9.002 ("The court that rendered the decree of divorce or annulment retains the power to enforce the property division as provided by Chapter 7, including a property division and any contractual provisions under the terms of an agreement incident to divorce or annulment under Section 7.006 that was approved by the court.").

Second, nothing about the location of the assets at issue, the division of the estate, the enforceability of the judgment, or indeed any issue raised by Rejina, implicates any due process concerns. Generally, due process requires only "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Roper v. Jolliffe*, 493 S.W.3d 624, 636 (Tex. App.—Dallas 2015, pet. denied) (citing *Mathews v. Eldridge,* 424 U.S. 319 (1976)). Rejina fails to identify any proceeding or filing about which she lacked notice or regarding which she was not provided a meaningful opportunity to be heard.

Finally, because the trial court made no finding regarding the total value of the estate or the percentage allocated to each party, we evaluate the fairness of the property division based on

–15–

the totality of the division rather than by focusing on any specific assets. *See Hailey v. Hailey*, 176 S.W.3d 374, 384 (Tex. App. —Houston [1st Dist.] 2004, no pet.) ("We emphasize, moreover, that the value of specific items of property is not an ultimate issue in the trial court's property division and does not require specific fact findings by the trial court."). We are unable to conclude that the trial court erred in dividing the estate, and for this reason as well as those listed above, overrule Rejina's sixth issue.

### III.

While Rejina's argument regarding Subrata's efforts to deprive her of community assets might be logical and persuasive, our job is not to substitute our judgment for the trial court's whenever we might have reached a different conclusion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985) ("The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred."); *In re P.C.S.*, 320 S.W.3d 525, 531 (Tex. App.—Dallas 2010, pet. denied) ("The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision."). Because the trial court observed the witnesses, determined their credibility and utilized its substantial discretion in dividing the estate based on evidence presented during trial, we find no abuse of discretion and therefore cannot substitute our judgment for the trial court's findings and conclusions. We accordingly affirm the trial court's Final Decree.

/Robert D. Burns, III/
ROBERT D. BURNS III
CHIEF JUSTICE

181035F.P05

–16–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

REJINA CHATTERJEE, Appellant

V.

SUBRATA BANERJEA, Appellee

No. 05-18-01035-CV

On Appeal from the 469th Judicial District Court, Collin County, Texas
Trial Court Cause No. 469-52424-2016.
Opinion delivered by Chief Justice Burns.
Justices Richter and Rosenberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered August 19, 2019.